IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

MEDICAL ASSOCIATES
OF PINELLAS, L.L.C.,

Chapter 11
Case No. 8:06-bk-4800-MGW

      Debtor.
_____/

## MEMORANDUM OPINION AND ORDER DISCHARGING
## ORDER TO SHOW CAUSE REGARDING PATIENT CARE OMBUDSMAN

Under new section 333 of the Bankruptcy Code,[1] if a debtor is a health case business, the Court is required to appoint an ombudsman to monitor the quality of patient care and to represent the interests of the patients of the health care business unless the Court finds that the appointment of an ombudsman is not necessary for the protection of patients under the specific facts of the case. 11 U.S.C. § 333(a)(1). BAPCPA also added a companion to section 333, new section 101(27A), which defines a "health care business" as "any public or private entity . . . that is primarily engaged in offering to the general public facilities and services for- (i) the diagnosis or treatment of injury, deformity or disease; and (ii) surgical, drug treatment, psychiatric, or obstetric care . . . ." 11 U.S.C. § 101(27A).

The debtor in this case, Medical Associates of Pinellas, L.L.C. ("Debtor"), provides administrative support to a group of physicians and their practices, with any services to the public only ancillary to that primary function. Accordingly, for the reasons set forth below, the Court concludes that the Debtor is not a "health care business" and, therefore, there is no requirement in this case to appoint a patient care ombudsman.

---

[1] Section 333 was added, effective for all cases filed on or after October 17, 2005, by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Unless otherwise noted, all references to "section" are to Title 11 of the United States Code, also known as the Bankruptcy Code.

I.  Procedural Posture of Case

This case was filed under chapter 11 on September 8, 2006. In the petition, under the heading "Nature of Business," the Debtor checked the box next to "Health Care Business." Accordingly, on September 12, 2006, on its own motion the Court entered its *Order to Show Cause as to Why Health Care Ombudsman Should Not Be Appointed* (Docket No. 12) (the "Order to Show Cause"). The Order to Show Cause directed the Debtor and other parties in interest to appear before the Court to determine whether a patient care ombudsman should be appointed pursuant to section 333(a)(1). The Order to Show Cause further advised that the Court would give specific consideration to the following three issues: (1) whether the Debtor is a "health care business" as defined in section 101(27A); (2) if the Debtor is a health care business, whether the appointment of a patient care ombudsman was not necessary under the specific facts of this case; and (3) if a health care ombudsman is to be appointed, what the scope and responsibilities of the ombudsman should be in this case.

For the reasons set forth below, the Court concludes that the Debtor is not a health care business as defined in section 101(27A) and further finds that even if the Debtor were a health care business, that the appointment of a patient care ombudsman is not necessary for the protection of patients under the specific facts and circumstances of this case. Based on the Court's determination that the Debtor is not a health care business and that the appointment of a patient care ombudsman is not necessary in this case, the Court does not need to and, therefore, does not make a determination as to the scope and responsibilities of a patient care ombudsman under section 333(b).

## II. Jurisdiction

This court has jurisdiction of this matter under 28 U.S.C. sections 157 and 1334(b). This is a core proceeding pursuant to 28 U.S.C. section 157(b)(2)(A) and (O).

## III. Conclusions of Law

A.  The Patient Care Ombudsman and Definition of a Health Care Business

Section 333 was enacted as part of BAPCPA to protect the interests of patients in the event of the bankruptcy of a health care business. Section 333(a)(1) provides as follows:

> If the debtor in a case under Chapter 7, 9, or 11 is a health care business, the court shall order, not later than 30 days after the commencement of the case, the appointment of an ombudsman to monitor the quality of patient care and to represent the interests of the patients of the health care business unless the court finds that the appointment of such ombudsman is not necessary for the protection of patients under the specific facts of the case.

11 U.S.C. § 333(a)(1).

In determining whether a patient care ombudsman must be appointed, the Court must first determine whether a debtor is a "health care business" as defined in section 101(27A). That section defines the term "health care business" to mean:

(A) any public or private entity (without regard to whether that entity is organized for profit or not for profit) that is primarily engaged in offering to the general public facilities and services for –
    (i)    the diagnosis or treatment of injury, deformity or disease; and
    (ii)   surgical, drug treatment, psychiatric, or obstetric care; and

(B)   includes –
    (i)    any –
        (I)    general or specialized hospital;
        (II)   ancillary ambulatory, emergency, or surgical treatment facility;
        (III)  hospice;

    (IV) home health agency; and other health care institution that is similar to an entity referred to in subclause (I), (II), (III), or (IV); and

  (ii) any long-term care facility, including any –
    (I) skilled nursing facility;
    (II) intermediate care facility;
    (III) assisted living center;
    (IV) home for the aged;
    (V) domiciliary care facility; and
    (VI) health care institution that is related to a facility referred to in subclause (I), (II), (III), (IV), or (V), if that institution is primarily engaged in offering room, board, laundry, or personal assistance with activities of daily living and incidentals to activities of daily living.

11 U.S.C. § 101(27A).

The Court concludes that subsection (A) of the definition of health care business in section 101(27A) requires the existence of the following four elements in order for a debtor to qualify as a "health care business":

 1. The debtor must be a public or private entity;

 2. The debtor must be primarily engaged in offering to the general public facilities and services;

 3. The facilities and services must be offered to the public for the diagnosis or treatment of injury, deformity or disease; and

 4. The facilities and services must be offered to the public for surgical care, drug treatment, psychiatric care or obstetric care.

The first prong of section 101(27A)(A) -- that a health care business must be a public or private, for profit or not for profit entity -- includes almost every conceivable entity. Therefore, the Court's inquiry must focus on the second, third, and fourth elements of subsection (A). In this analysis the Court is guided by subsection (B) of section 101(27A),

which sets out examples of entities that fall within the definition of "health care business."

B.  The Debtor Is Not a Health Care Business

While initially listing itself as a health care business, on further reflection in response to the Order to Show Cause, the Debtor contends that it is not a health care business as defined in section 101(27A) as it is not "primarily engaged in offering facilities and services to the general public." Instead, the Debtor contends that it was established to provide administrative support to a group of physicians and their practices, with any services to the public only ancillary to that primary function.

A similar issue was before Judge Bruce A. Markell in the case of *In re 7-Hills Radiology, LLC*, 350 B.R. 902 (Bankr. D. Nev. 2006). In that case, the debtor was a radiology clinic that performed radiological and X-ray services to patients at the request of referring physicians. *Id.* at 904. The *7-Hills* debtor did not perform procedures or tests on a walk-in basis and did not advise patients directly of the test results, communicating only with the referring physicians. *Id.* Because the debtor's services and facilities were offered to referred patients only, the court concluded "[t]his limitation of its business to referring physicians takes [the debtor] out of the definition of a health care business." *Id.*

Like the debtor in *7-Hills*, the Debtor did not primarily offer services to the general public. Instead, the Debtor was established to provide administrative support to a group of doctors.[2] The Debtor's business concept was to create an efficiency for its doctors by combining common needs for non-medical services, such as billing, insurance, human resources, and related financial services. The Debtor also provided laboratory support to its

---

[2] In this case, the Debtor's business is not identical to the business of the debtor in *7-Hills*. Here, the Debtor provided laboratory services to patients referred by outside physicians as well as patients of member doctors. However, the proffers at the hearing on the Order to Show Cause demonstrated to the Court's satisfaction that the laboratory operation was ancillary to the Debtor's primary business of providing administrative support services to member doctors.

member doctors, sharing the costs and use of expensive laboratory equipment. The Debtor did not advertise or procure patients on behalf of the member doctors nor were the doctors doing business under the name of "Medical Associates of Pinellas, L.L.C.," but instead conducted business in their individual names or the names of their individual professional associations. Accordingly, it is clear that the Debtor was not primarily engaged in offering facilities and services to the general public and does not satisfy the second prong of the test for a "health care business."

Furthermore, the Debtor's business does not meet the third and fourth elements of a "health care business" in that the Debtor did not provide any facilities and services for the "diagnosis or treatment of injury, deformity or disease" and "surgical, drug treatment, psychiatric or obstetric care." As discussed above, the Debtor was an administrative support arm of numerous doctors. While the Debtor, through its laboratory services, arguably might have been engaged in the diagnosis of disease, its business does not meet the fourth requirement of section 101(27A)(A)(ii), which requires that a health care business also must provide facilities and services for surgical, drug treatment, psychiatric or obstetric care.[3] This Debtor simply did not provide those types of services as its primary business function, notwithstanding any laboratory work performed for its member physicians and any patients referred by outside physicians.

Subsection (B) of section 101(27A) sets forth examples of the types of businesses included in the definition of a "health care business." While the Court acknowledges that the

---

[3] The Court does not adopt the position advanced by counsel for the U.S. Trustee at the hearing on the Order to Show Cause that the reference to "drug treatment" in section 101(27A)(A)(ii) can be interpreted as including the writing or dispensing of prescriptions (which could include all doctors and pharmacies). The Court views Congress' reference to "drug treatment" as applying to facilities that treat drug addiction or dependency. The interpretation suggested by the U.S. Trustee would render meaningless the balance of section 101(27A)(A)(ii) because virtually all areas of medical treatment involve the prescription of drugs to include the surgical, psychiatric, and obstetric areas.

use of the term "includes" as the introductory language of subparagraph (B) is not limiting under section 102(3) (which states that "includes" is not limiting), the Court cannot ignore established canons of statutory construction. As Judge Markell pointed out in *7-Hills,* the Court must also consider the canon of *noscitur a sociis,* roughly translated as "known for its associates," which means that a general definition followed by a number of examples implies that it is a description of the type of business that is meant to be included within the general definition. 350 B.R. at 904-905.

From those examples, it appears that Congress intended a health care business to be something more than an administrative support facility that offers ancillary laboratory services. Each of the examples included in subparagraph (B) of section 101(27A) describes businesses where patients reside, receive emergency ambulatory or surgical treatment, or receive in-home or inpatient care, and clearly includes long-term care health facilities such as hospitals and nursing homes. Arguably, the definition could include walk-in clinics where patients stay for short durations. However, while the Court does not determine the precise limits of what is or is not a "health care business" under section 101(27A), the examples included in subparagraph (B) appear to contemplate something more than a doctor's office and clearly require more than an administrative support facility, such as the Debtor, that does not deal with the general public.

Finally, although the legislative history of the BAPCPA is sparse, the legislative history relating to efforts in 1999 and 2000 to amend the Bankruptcy Code to address patient care issues appears consistent with the concept that a health care business was intended to refer to inpatient care facilities such as hospitals and nursing homes and not most out-patient facilities such as a doctor's office. For example, in the Senate discussions of the original

versions of the heath care amendments that appeared in the Bankruptcy Reform Act of 1999 (which are virtually the same as the BAPCPA amendments), Senator Charles E. Grassley stated, "I was shocked to realize that the Bankruptcy Code doesn't require bankruptcy trustees and creditor committees to consider the welfare of patients *when closing down or reorganizing a hospital or nursing home.* So, under the [Bankruptcy Reform Act of 1999] *whenever a hospital or nursing home declares bankruptcy,* a patient ombudsman will be appointed to represent the interests of patients during bankruptcy proceedings." 145 Cong. Rec. S2737-01, S2739 (1999) (emphasis added). Likewise, during the following year's congressional debate in connection with the 1999 legislation, Senator Grassley commented that, "this title amends the code to deal with problems presented when a health care business, *such as a hospital or nursing home*, files for bankruptcy under Chapters, 7, 9 or 11." 146 Cong. Rec. S11683-02, S11720 (2000) (emphasis added). *See also In re Banes,* No. 06-81341-7, 2006 WL 3333805, at *2 (Bankr. M.D.N.C. Nov. 16, 2006) (finding that "the Debtor's dental practice does not provide patients with shelter and sustenance in addition to medical treatment, and is plainly not within the range of health care businesses anticipated by the statute.").

C.  A Patient Care Ombudsman is Not Necessary under the Facts of this Case

Having concluded that the Debtor is not a health care business as defined in section 101(27A), the Court finds that the appointment of a patient care ombudsman is not mandated. However, even if the Debtor were a "health care business," the Court would find that "the appointment of such ombudsman is not necessary for the protection of patients under the specific facts of this case." 11 U.S.C. § 333(a). Under the facts of this case, the Court finds that there would be no need for the protection of patients given that the Debtor, as the

administrative support provider to its member physicians, has ceased doing business and no longer provides even administrative support or lab services to those doctors.

As stated in *Banes,* "Congress chose to write this statutory definition in the present tense, indicating that it was concerned with appointing patient care ombudsmen in cases where health care businesses seeking bankruptcy protection are currently engaged in the ongoing care of patients." 2006 WL 3333805, at *3. In this regard, as one of the "first day orders" entered in this case, the Court entered an order authorizing the Debtor's member physicians to maintain the custody of their patients' records (as required under state law and regulations) and authorized the member physicians to continue to provide patient care to their patients.[4] As a result, even if the Debtor were a health care business, there would be little or nothing for a patient care ombudsman to monitor or report on. In fact, it would likely be difficult and impracticable for the ombudsman to carry out the statutory duties set forth in section 333(b) such as monitoring the quality of patient care, interviewing patients and their physicians, and preparing a report to the Court with respect to the quality of patient care. The Court further finds that the expense associated with the appointment and compensation of an ombudsman, the employment and compensation of professionals to assist the ombudsman, and the preparation of a report with respect to the quality of patient care would serve little purpose under the circumstances of this case.[5]

---

[4] The Court entered its *Order Granting Motion for Authority to Transfer Patient Records and Patient Care* (Docket No. 46) on September 25, 2006, to ensure the orderly transition of patient care and the appropriate custody and confidentiality of patient records in accordance with applicable state and federal law and regulations given that the Debtor ceased its business operations on September 15, 2006. This order was entered without prejudice to any rights of the estate, if any, in such patient records and/or goodwill associated with patient care.

[5] BAPCPA amended section 330 to include the patient care ombudsman and any professionals employed thereby in the list of persons who may seek compensation from the estate under that section.

IV.   Conclusion

Accordingly, this Court finds, concludes, and orders that (i) the Debtor is not a health care business and, therefore, the Court is not required to appoint a patient care ombudsman and (ii) that the appointment of a patient care ombudsman is not necessary for the protection of patients under the facts of this case.

Based on the Court's conclusion that the Debtor is not a health care business and that the appointment of a patient care ombudsman is not necessary under the facts and circumstances of this case, the Court need not address the third issue as set forth in the Order to Show Cause, the scope and responsibilities of a patient care ombudsman in this case.

Accordingly, for the foregoing reasons, it is

ORDERED:

1.   The Court will not appoint a patient care ombudsman in this case.

2.   The order to show cause is discharged.

DONE and ORDERED in Tampa, Florida, on _January 3, 2007_.

_____
Michael G. Williamson
United States Bankruptcy Judge

Copies to:

**Theresa M. Boatner, Esq.**
**Office of the United States Trustee**
501 East Polk Street
Timberlake Annex, Suite 1200
Tampa, FL 33602

**David S. Jennis, Esq.**
Jennis Bowen & Brundage, P.L.
400 N. Ashley Street, Suite 2540
Tampa, FL 33602
Attorney for the Debtor